**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| HARDEE'S RESTAURANTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 3:25-CV-01359 |
| ARC BURGER, LLC and ANAND U. GOWDA, | ) | |
| | ) | JUDGE ALETA A. TRAUGER |
| | ) | |
| Defendants. | ) | JURY DEMAND |
| | ) | |
| | ) | |
| ARC BURGER, LLC, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARDEE'S RESTAURANTS LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

### ARC BURGER, LLC'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

Defendant and Counterclaimant ARC Burger, LLC ("ARC" or "Defendant"), hereby answers the First Amended Complaint filed by Plaintiff Hardee's Restaurants LLC ("HR" or "Plaintiff"). Except for facts expressly admitted below, Defendant denies every allegation in the First Amended Complaint.

### ANSWER TO I. INTRODUCTION

1. Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 1 and denies the allegations on that basis.

2.      Defendant admits it was formed at the direction of High Bluff Capital Partners, which is a private investment firm.  Defendant admits it acquired a portfolio of Hardee's franchised restaurants in roughly August 2023.

3.      Defendant admits it became the franchisee of 77 Hardee's franchised restaurants in Alabama, Florida, Georgia, Illinois, Kansas, Missouri, Montana, South Carolina, and Wyoming (the "Restaurants") in roughly August 2023 pursuant to the terms of certain Franchise Agreements.

4.      The allegations in paragraph 4 characterize contractual language and are accordingly conclusions of law to which no answer is required.  To the extent paragraph 4 contains factual allegations, Defendant denies those allegations.

5.      Defendant admits it continuously operated the Restaurants, including Restaurants operated out of locations which it rented from Plaintiff, until December of 2025.  Defendant denies the remaining allegations of paragraph 5.

6.      Defendant admits it worked with Plaintiff to reach agreements regarding its payment obligations to Plaintiff.  Defendant denies the remaining allegations of paragraph 6.

7.      Defendant admits that Plaintiff purported to exercise its contractual right to terminate the Franchise Agreements in September 2025.  Defendant denies the remaining allegations of paragraph 7.

8.      Defendant admits that it continued to operate the Restaurants after September 2025.  Defendant denies the remaining allegations of paragraph 8.

9.      Defendant admits it closed the Restaurants in December 2025.  Defendant denies the remaining allegations of paragraph 9.

10.      Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 10 and denies the allegations on that basis.

2

<h2 style="text-align:center">ANSWER TO II.  PARTIES</h2>

11.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 11 and denies the allegations on that basis.

12.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 12 and denies the allegations on that basis.

13.     Defendant admits the allegations of paragraph 13.

<h2 style="text-align:center">ANSWER TO III.  JURISDICTION AND VENUE</h2>

14.     The allegations in paragraph 14 are conclusions of law and, as such, no answer is required.  To the extent paragraph 14 contains any factual allegations, Defendant denies those allegations.

15.     Defendant admits entering into the referenced Franchise Agreements.  Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 15 and denies the allegations on that basis.

16.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 16 and denies the allegations on that basis.

17.     The allegations in paragraph 17 are conclusions of law and, as such, no answer is required.  To the extent paragraph 17 contains any factual allegations, Defendant denies those allegations.

<h2 style="text-align:center">ANSWER TO IV.  FACTUAL ALLEGATIONS</h2>

18.     Defendant admits the allegations of paragraph 18.

19.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 19 and denies the allegations on that basis.

20.     Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 20 and denies the allegations on that basis.

3

21. Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 21 and denies the allegations on that basis.

22. Defendant admits that it and High Bluff entered into the MCA. The remaining allegations in paragraph 22 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent the remaining allegations of paragraph 22 contains factual allegations, Defendant denies those allegations.

23. The allegations in paragraph 23 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 23 contains factual allegations, Defendant denies those allegations.

24. The allegations in paragraph 24 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 24 contains factual allegations, Defendant denies those allegations.

25. Defendant admits the allegations of paragraph 25.

26. Defendant admits that it and Plaintiff entered into the agreements referenced in paragraph 26. The remaining allegations in paragraph 26 characterize contractual language and are accordingly conclusions of law to which no answer is required.

27. The allegations in paragraph 27 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 27 contains factual allegations, Defendant denies those allegations.

28. The allegations in paragraph 28 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 28 contains factual allegations, Defendant denies those allegations.

4

29. The allegations in paragraph 29 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 29 contains factual allegations, Defendant denies those allegations.

30. The allegations in paragraph 30 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 30 contains factual allegations, Defendant denies those allegations.

31. Defendant admits the allegations of paragraph 31.

32. The allegations in paragraph 32 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 32 contains factual allegations, Defendant denies those allegations.

33. The allegations in paragraph 33 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 33 contains factual allegations, Defendant denies those allegations.

34. Defendant admits the allegations of paragraph 34.

35. The allegations in paragraph 35 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 35 contains factual allegations, Defendant denies those allegations.

36. Defendant admits that Plaintiff asserted that it was in default under the Franchise Agreements and Sublease Agreement due to a failure to make timely payments. Defendant denies the remaining allegations of paragraph 36.

37. Defendant admits that Plaintiff sent it a Notice of Default on or about June 25, 2025 which asserted that Defendant was in default under its payment obligations under the

Franchise Agreements and which set forth Plaintiff's calculation of the amounts outstanding. Defendant denies the remaining allegations of paragraph 37.

38. Defendant admits that Plaintiff sent Defendant a Notice of Default on or about August 28, 2025 which asserted that Defendant was in default under its payment obligations under the Franchise Agreements and the Sublease Agreements and which set forth Plaintiff's calculation of the amounts outstanding. Defendant denies the remaining allegations of paragraph 38.

39. Defendant admits that the Notice of Default asserted that Plaintiff would have the right to terminate the Franchise Agreement and Sublease Agreements if Defendant did not cure its purported defaults within ten days of the notice. Defendant denies the remaining allegations of paragraph 39.

40. The allegation in paragraph 40 is a conclusion of law to which no answer is required. To the extent paragraph 40 contains factual allegations, Defendant denies those allegations.

41. Defendant admits that Plaintiff sent a Notice of Termination to Defendant on or about September 11, 2025 which purported to terminate the Franchise Agreements, purported to exercise Plaintiff's right to accelerate payment under the Promissory Note, and asserted that the unpaid principal amount of $138,174.12 was immediately due and payable. Defendant denies the remaining allegations in paragraph 41.

42. Defendant lacks information or belief sufficient to admit or deny the allegations of paragraph 42 and denies the allegations on that basis.

43. The allegations in paragraph 43 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 43 contains factual allegations, Defendant denies those allegations.

6

44. The allegations in paragraph 44 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 44 contains factual allegations, Defendant denies those allegations.

45. Defendant admits that Defendant and Plaintiff entered into a forbearance/standstill agreement following Plaintiff's issuance of the Notice of Termination. The remaining allegations in paragraph 45 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 45 contains factual allegations, Defendant denies those allegations.

46. Defendant admits that Defendant continued to operate the Restaurants after entering into the forbearance/standstill agreement. Defendant denies the remaining allegations of paragraph 46.

47. The allegation in paragraph 47 is a conclusion of law to which no answer is required. To the extent paragraph 47 contains factual allegations, Defendant denies those allegations.

48. The allegations in paragraph 48 are conclusions of law to which no answer is required. To the extent paragraph 48 contains factual allegations, Defendant denies those allegations.

49. The allegations in paragraph 49 are conclusions of law to which no answer is required. To the extent paragraph 49 contains factual allegations, Defendant denies those allegations.

50. The allegations in paragraph 50 are conclusions of law to which no answer is required. To the extent paragraph 50 contains factual allegations, Defendant denies those allegations.

51. Defendant admits that Plaintiff purported to terminate the forbearance/standstill agreement as of December 15, 2025 as to nine of the Restaurants and as of December 22, 2025 as to all remaining Restaurants. Defendant admits it ceased operating all the Restaurants as of December 22, 2025. Defendant denies the remaining allegations of paragraph 51.

52. The allegations in paragraph 52 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 52 contains factual allegations, Defendant denies those allegations.

53. The allegations in paragraph 53 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 53 contains factual allegations, Defendant denies those allegations.

54. The allegations in paragraph 54 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 54 contains factual allegations, Defendant denies those allegations.

55. The allegations in paragraph 55 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 55 contains factual allegations, Defendant denies those allegations.

56. Defendant admits it has not made payments under the Sublease Agreements during the holdover period. Defendant denies the remaining allegations of paragraph 56.

57. Defendant admits that Anand Gowda executed a Guarantee and Assumption of Franchisee's Obligations for each of the Restaurants as well as a First Amendment and Second Amendment to those agreements. The remaining allegations in paragraph 57 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 57 contains factual allegations, Defendant denies those allegations.

8

58.     The allegations in paragraph 58 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 58 contains factual allegations, Defendant denies those allegations.

59.     The allegations in paragraph 59 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 59 contains factual allegations, Defendant denies those allegations.

60.     The allegations in paragraph 60 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 60 contains factual allegations, Defendant denies those allegations.

61.     The allegations in paragraph 61 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 61 contains factual allegations, Defendant denies those allegations.

62.     The allegations in paragraph 62 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 62 contains factual allegations, Defendant denies those allegations.

63.     The allegations in paragraph 63 are conclusions of law to which no answer is required. To the extent paragraph 63 contains factual allegations, Defendant denies those allegations.

64.     Defendant admits that Plaintiff sent Defendant a Notice of Default on or about August 28, 2025 which asserted that Defendant was in default under its payment obligations under the Franchise Agreements and the Sublease Agreements and which set forth Plaintiff's calculation of the amounts outstanding. Defendant denies the remaining allegations of paragraph 64.

9

65.     The allegations in paragraph 65 characterize contractual language and are accordingly conclusions of law to which no answer is required.  To the extent paragraph 65 contains factual allegations, Defendant denies those allegations.

**ANSWER TO V.  FIRST CAUSE OF ACTION – BREACH OF CONTRACT—
FRANCHISE AGREEMENTS AND GUARANTEES**

66.     Defendant incorporates by reference the preceding paragraphs as if fully set forth herein.

67.     The allegations in paragraph 67 are conclusions of law to which no answer is required.  To the extent paragraph 67 contains factual allegations, Defendant denies those allegations.

68.     The allegations in paragraph 68 characterize contractual language and are accordingly conclusions of law to which no answer is required.  To the extent paragraph 68 contains factual allegations, Defendant denies those allegations.

69.     The allegations in paragraph 69 are conclusions of law to which no answer is required.  To the extent paragraph 69 contains factual allegations, Defendant denies those allegations.

70.     Defendant denies the allegations of paragraph 70.

71.     Defendant denies the allegations of paragraph 71.

72.     Defendant denies the allegations of paragraph 72.

**ANSWER TO V.  SECOND CAUSE OF ACTION – BREACH OF POST-
TERMINATION AGREEMENT**

73.     Defendant incorporates by reference the preceding paragraphs as if fully set forth herein.

10

74. The allegations in paragraph 74 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 74 contains factual allegations, Defendant denies those allegations.

75. The allegations in paragraph 75 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 75 contains factual allegations, Defendant denies those allegations.

76. Defendant denies the allegations of paragraph 76.

77. Defendant denies the allegations of paragraph 77.

**ANSWER TO V.  THIRD CAUSE OF ACTION – UNJUST ENRICHMENT**

78. Defendant incorporates by reference the preceding paragraphs as if fully set forth herein.

79. The allegations in paragraph 79 are conclusions of law to which no answer is required. To the extent paragraph 79 contains factual allegations, Defendant denies those allegations.

80. The allegations in paragraph 80 are conclusions of law to which no answer is required. To the extent paragraph 80 contains factual allegations, Defendant denies those allegations.

81. The allegations in paragraph 81 are conclusions of law to which no answer is required. To the extent paragraph 81 contains factual allegations, Defendant denies those allegations.

82. The allegations in paragraph 82 are conclusions of law to which no answer is required. To the extent paragraph 82 contains factual allegations, Defendant denies those allegations.

83. Defendant denies the allegations of paragraph 83.

84. Defendant denies the allegations of paragraph 84.

**ANSWER TO V.  FOURTH CAUSE OF ACTION – BREACH OF CONTRACT— SUBLEASE AGREEMENTS**

85. Defendant incorporates by reference the preceding paragraphs as if fully set forth herein.

86. The allegations in paragraph 86 are conclusions of law to which no answer is required.  To the extent paragraph 86 contains factual allegations, Defendant denies those allegations.

87. The allegations in paragraph 87 are conclusions of law to which no answer is required.  To the extent paragraph 87 contains factual allegations, Defendant denies those allegations.

88. Defendant denies the allegations of paragraph 88.

89. The allegations in paragraph 89 are conclusions of law to which no answer is required.  To the extent paragraph 89 contains factual allegations, Defendant denies those allegations.

90. Defendant denies the allegations of paragraph 90.

**ANSWER TO V.  FIFTH CAUSE OF ACTION – BREACH OF CONTRACT— PROMISSORY NOTE**

91. Defendant incorporates by reference the preceding paragraphs as if fully set forth herein.

92. The allegations in paragraph 92 are conclusions of law to which no answer is required.  To the extent paragraph 92 contains factual allegations, Defendant denies those allegations.

12

93. The allegations in paragraph 93 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 93 contains factual allegations, Defendant denies those allegations.

94. The allegations in paragraph 94 characterize contractual language and are accordingly conclusions of law to which no answer is required. To the extent paragraph 94 contains factual allegations, Defendant denies those allegations.

95. Defendant admits that Plaintiff declared the unpaid principal amount of $138,174.12 due and payable in a written notice to ARC on September 11, 2025 but denies that amount was, in fact, due and payable.

96. The allegations in paragraph 96 are conclusions of law to which no answer is required. To the extent paragraph 96 contains factual allegations, Defendant denies those allegations.

97. Defendant denies the allegations of paragraph 97.

98. Defendant denies the allegations of paragraph 98.

## DEFENDANT'S ADDITIONAL DEFENSES

As for its additional defenses to the First Amended, and for each purported cause of action therein, Defendant alleges:

### FIRST ADDITIONAL DEFENSE

(Failure to State Cause of Action)

The First Amended Complaint and/or each claim contained therein fails to state facts sufficient to constitute a cause of action against Defendant.

13

## SECOND ADDITIONAL DEFENSE
(Waiver)

Plaintiff has waived any claims, in whole or in part, against Defendant.

## THIRD ADDITIONAL DEFENSE
(Failure to Mitigate)

Defendant is informed and believes and thereon alleges that Plaintiff has failed to mitigate its losses, if any, and as a result of such failure, Plaintiff's claims against Defendant are reduced, excused and/or discharged.

## FOURTH ADDITIONAL DEFENSE
(Misrepresentation)

Any of the conduct of Defendant which is alleged to be unlawful or improper was taken as the result of misrepresentations or other wrongful conduct by Plaintiff.

## FIFTH ADDITIONAL DEFENSE
(Privilege/Justification)

Plaintiff's purported claims for relief, and each of them, are barred in whole or in part by Defendant's privilege, business necessity and justification under the circumstances for the acts and omissions alleged in the First Amended Complaint.

## SIXTH ADDITIONAL DEFENSE
(Estoppel)

Plaintiff's claims are barred, in whole or part, by virtue of the application of the doctrine of estoppel.

## SEVENTH ADDITIONAL DEFENSE
(Comparative Fault)

To the extent plaintiff has suffered any damages as a result of the facts alleged in the First Amended Complaint, persons and entities other than Defendant are negligent and/or at fault in

14

connection with those acts, and by reason thereof, Plaintiff's rights of recovery from Defendant should be reduced by that amount which the negligence and fault of persons and entities other than Defendant contributed to any damages.

## EIGHTH ADDITIONAL DEFENSE
### (Statute of Limitations)

Defendant is informed and believes, and thereon alleges, that some or all of Plaintiff's claims and allegations are barred by the applicable statutes of limitation.

## NINTH ADDITIONAL DEFENSE
### (Laches)

As to each and every claim purporting to sound in equity, Plaintiff's First Amended Complaint is barred by laches.

## TENTH ADDITIONAL DEFENSE
### (Unclean Hands)

As to each and every claim purporting to sound in equity, Plaintiff's First Amended Complaint is barred by the doctrine of unclean hands.

## ELEVENTH ADDITIONAL DEFENSE
### (Comparative Fault and Comparative Negligence)

Defendant is informed and believes and thereon alleges that Plaintiff, by its acts and conduct, has failed to exercise reasonable care and diligence in its own behalf, thereby contributing to its alleged damages. Plaintiff's recovery against Defendant, if any, must be reduced by the proportion of damages caused by the acts and conduct of plaintiff as opposed to that of Defendant.

## TWELFTH ADDITIONAL DEFENSE
### (Business Necessity)

15

Any of the conduct of Defendant which is alleged to be unlawful or improper was taken for reasons of business justification and necessity under the circumstances and in accordance with business practices.

## THIRTEENTH ADDITIONAL DEFENSE
### (Speculative Damages)

Plaintiff's claimed damages against Defendant are speculative, and Plaintiff is barred from asserting any such damages against Defendant.

## FOURTEENTH ADDITIONAL DEFENSE
### (Consent)

As to any act or conduct on the part of Defendant alleged to have been unlawful, Plaintiff consented to that act or conduct.

## FIFTEENTH ADDITIONAL DEFENSE
### (Full Performance)

Defendant has fully performed any contractual, statutory or other alleged duties to Plaintiff, other than those which have been excused or discharged, and Plaintiff is thus barred from recovery.

## SIXTEENTH ADDITIONAL DEFENSE
### (Condition Precedent)

Defendant is informed and believes and thereon alleges that any obligations on the part of Defendant to Plaintiff are subject to conditions precedent which have not occurred and accordingly, Defendant is not obligated and is not liable in any way to Plaintiff.

16

**SEVENTEENTH ADDITIONAL DEFENSE**

(First Material Breach)

Plaintiff's first material breach of the relevant agreements excused any alleged non-performance by Defendant.

WHEREFORE, Defendant demands a trial by jury, requests that Plaintiff's claims be dismissed and requests any such further relief to which it may be entitled.

**COUNTERCLAIM**

COMES NOW, Counterclaimant ARC BURGER, LLC, by and through the undersigned counsel, and hereby sues Counter Defendant HARDEE'S RESTAURANTS LLC, and in support thereof, alleges the following:

## I. INTRODUCTION

1. In August of 2023, ARC Burger, LLC ("ARC") entered into Franchise Agreements to operate Hardee's franchised restaurants (the "Restaurants" or a "Restaurant") in Alabama, Florida, Georgia, Illinois, Kansas, Missouri, Montana, South Carolina, and Wyoming. Unfortunately, ARC's ability to perform under the Franchise Agreements was significantly hampered by a series of sharp practices and underhanded tactics deployed by Hardee's, all of which violated the implied covenant of good faith and fair dealing (the "Implied Covenant") governing the parties' contractual relationship. Hardee's misconduct includes, but is not limited to, failing to disclose the true condition of the Restaurants to ARC, failing to provide the promised marketing and technological support needed for ARC to operate the Franchises, and ultimately leaving more than 1,600 employees without jobs just one week before Christmas.

2. Now, rather than take responsibility for hamstringing the Restaurants' ability to succeed, Hardee's seeks to continue exploiting ARC through this lawsuit.

## II.   THE PARTIES, JURISDICTION AND VENUE

3.    Hardee's is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 6700 Tower Circle, Suite 1000, Franklin, Tennessee, 37067.

4.    ARC is a Delaware limited liability company with its principal place of business in California.

## III.   FACTUAL ALLEGATIONS

### A.  Hardee's Misleads ARC During The Due Diligence Process

5.    ARC entered into the Franchise Agreements to operate the Restaurants as the Restaurants were emerging from a bankruptcy restructuring.  Before ARC agreed to operate the Restaurants, it conducted due diligence regarding their condition and financial fitness.

6.    During the due diligence process, ARC was not given access to non-public areas of the Restaurants during diligence, commonly known as the "back-of-house" or "BOH" areas. Because ARC did not receive access to BOH areas, it was prevented from discovering major equipment failures, unsafe conditions, and non-functional or obsolete technology systems.

7.    There is no doubt that Hardee's knew about these conditions, having conducted multiple third-party annual audits of the Restaurants prior to ARC's ownership.  However, the severe subsequently-discovered deterioration found throughout the Restaurants was never disclosed.

8.    For example, ARC discovered that the Restaurants consistently had point-of-sale ("POS") and Wi-Fi outages which prevented the Restaurants from consistently operating.  These outages cost ARC at least an estimated $1 million in annualized sales in addition to an

18

incalculable loss of goodwill due to customer frustrations from the inability to execute a quick order.

9.     As another example, ARC discovered that many of the Restaurants were sold with broken-down fryers, charbroilers, grills, and food holding units.  Many of the Restaurants had sagging ceilings, broken tables, and other forms of damage and deterioration.  Others lacked functional HVAC units.  None of these issues were disclosed to ARC during the due diligence process.

10.     Because the BOH conditions were concealed, the true amount of capital required to stabilize the Restaurants was not apparent to ARC.  Ultimately, this led to ARC materially overpaying for the right to operate the Restaurants and being forced to spend over $10 million just to stabilize basic operations.

**B.  Hardee's Misleads ARC In Connection With Hardee's Ad Fund Relief**

11.     In the spirit of partnership, ARC agreed to operate 27 underperforming Restaurants, which had negative cash flow, so that Hardee's could preserve the royalties, advertising, and rental income generated by these Restaurants.  In exchange, Hardee's agreed to significantly reduce ARC's obligation to contribute funds spent on advertising the Hardee's brand, including the Hardee's National Advertising Fund ("HNAF") with respect to all Restaurants.  ARC reasonably understood that Hardee's would spend comparable amounts to market and promote these 27 Restaurants, thereby making up for the advertising dollars that ARC was not required to contribute.  Such an arrangement is typical in franchisor-franchisee relationships.

12.     After ARC purchased the Restaurants, Hardee's did not make additional payments.  Even worse, because HNAF contributions are spent regionally, Hardee's failure to

19

make up for the HNAF contributions that ARC was not obligated to make led to decreased advertising efforts for all Restaurants. As a result, the portfolio was deprived of critical marketing dollars, impacting ARC's ability to generate cash flows that would have allowed ARC to address all the other much-needed investments in the Restaurants. ARC would never have purchased the 27 underperforming Restaurants had it known that Hardee's would not make up for the HNAF contributions it relieved ARC of making. Because Hardee's did not make additional payments towards marketing, there was effectively no consideration received by ARC in exchange for its agreement to operate the 27 cash-flow negative Restaurants.

### C. Hardee's Fails To Maintain Proper Operational Controls

13. While ARC worked to operate the Franchises to the best of its abilities, Hardee's failed to satisfy its obligations to maintain the operational controls required to support ARC's operations of the Restaurants.

14. For example, despite repeated requests, Hardee's failed to provide reasonable visibility into supply chain conditions and failed to provide timely or reliable forecasts to ARC. This led to large, unforeseen negative swings in the cash flow profile of the business.

15. Furthermore, in the summer of 2024, Hardee's launched a chicken tenders promotion during a time when the cost of those chicken tenders to franchisees was increasing at a rate of roughly 30%. This led to a severely unprofitable promotion that frustrated many franchisees. This issue largely stemmed from Hardee's internal lack of communication between its supply chain and marketing departments. ARC was ultimately the one to alert Hardee's supply chain team to the inflation issue.

16. When ARC obtained the Restaurants, the Restaurants needed a full upgrade of their POS systems. However, over the course of a year, Hardee's unreasonably delayed selecting

a POS vendor. Hardee's long delay in selecting a POS vendor forced ARC to continue operating the Restaurants with outdated hardware that frequently crashed. This delay was particularly harmful because ARC held positive relationships with both of the vendors that Hardee's was evaluating and had already arranged to purchase the necessary equipment from each vendor at little to no cost.

17. Hardee's also refused to allow common-sense adaptations that would have allowed the Restaurants to generate more cash flow. Hardee's refused to allow ARC to test promotional initiatives that could have improved much needed demand for the Restaurants, such as serving breakfast all day and serving burgers for breakfast. Hardee's also forced the Restaurants to operate during non-profitable hours.[1]

18. Hardee's failings were likely caused or contributed to by chronic leadership turnover at Hardee's. Between 2023 and 2025, Hardee's had three Chief Executive Officers, two Chief Financial Officers, a newly appointed Chief Marketing Officer, and a vacant Chief Technical Officer position. This constant executive churn led to a lack of clear strategic direction, siloed business functions, and left Hardee's operating without alignment.

**D. Hardee's Engages In Sharp Negotiation Tactics and Ultimately Takes The Livelihoods of ARC's 1,600+ Employees The Week Before Christmas**

19. In late August of 2025, ARC and Hardee's came close to reaching an agreement for ARC to infuse additional capital into the Restaurants and continue operating them. The terms of this deal were very favorable to ARC, reflecting Hardee's substantial role in in the events leading to ARC's liquidity challenges.

---

[1] Hardee's demand that franchisors operate during non-profitable hours has given rise to other lawsuits by franchisees. *See Paradigm Investment Group, LLC v. Hardee's Restaurants, LLC*, 3:2025-cv-00419, United States District Court for the Middle District of Tennessee.

21

20. Ultimately, ARC was not able to accept the terms of a renegotiated arrangement with Hardee's because Hardee's had proven itself unable to satisfy its obligations as a franchisor, including managing its supply chains, supporting franchisee's technological needs, and providing marketing.

21. After these negotiations failed, Hardee's, ARC, and a lender (the "Lender") began to negotiate a potential agreement (the "Tri-Party Agreement") that would allow the operation of the Restaurants until they could be sold to new franchisees. Throughout these negotiations, Hardee's deployed a series of sharp and exploitative tactics designed to put pressure on ARC.

22. The Restaurants provided employment to more than 1,600 people. Many of these employees are of humble means and depend on their paychecks for basic essentials of life.

23. While the tri-party negotiations were ongoing, Hardee's repeatedly demanded that ARC make payments to Hardee's within 24 hours under the threat of terminating ARC's Restaurants and leaving its employees without their livelihood. For example, on Tuesday, November 25, 2025, just two days before Thanksgiving, Hardee's demanded payment of $125,000 by close-of-business, threatening to close nine of ARC's Restaurants in Atlanta (the "Atlanta Restaurants") if the payment was not received. Hardee's repeated that tactic on December 3, 2025, demanding payment of $125,000 by close of business to keep the Atlanta Restaurants open.

24. For weeks, Hardee's forced ARC to operate under constant uncertainty, trying to protect employees while facing repeated last-minute shutdown threats and urgent payment demands. Hardee's actions created an environment that was destabilizing, unsustainable, and operationally disruptive.

25. On Thursday, December 11, 2025, the parties appeared close to finalizing the Tri-Party Agreement.

26. The following day, the Lender raised concerns regarding the Tri-Party Agreement due to news articles about the Complaint which Hardee's filed in this action. The Lender indicated it needed to reevaluate the Tri-Party Agreement and lower its valuation of the Restaurants in light of the Complaint.

27. On December 12 at approximately 8:00 P.M. Eastern Time, Hardee's ordered the Atlanta Restaurants to close by midnight. After hours of phone calls, at ARC's request, that deadline was postponed until the following Monday to allow ARC to talk with the Lender and, separately, to prepare for the first potential closures of the Atlanta Restaurants.

28. On Monday, December 15, the Lender informed ARC and Hardee's that it was unable to get credit committee approval for the Tri-Party Agreement. As a result, on December 15, 2025, Hardee's terminated ARC's ability to operate the Atlanta Restaurants. On information and belief, Hardee's opted to close the Atlanta Restaurants first because they were the most profitable and Hardee's desired to obtain these cash flows for itself.

29. Hardee's terminated ARC's ability to operate the remaining 68 Restaurants on December 22, 2025, leaving more than 1,600 people jobless just days before Christmas.

## IV. CAUSE OF ACTION

### Count I-Breach of the Implied Covenant of Good Faith and Fair Dealing

30. ARC incorporates by reference the preceding paragraphs.

31. ARC and Hardee's entered into the Franchise Agreement.

32. Like all contracts governed by Tennessee law, the Franchise Agreement contains an implied covenant of good faith and fair dealing "whereby neither party shall do anything

23

which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 662 (Tenn. 2013).

33. Hardee's breached the Implied Covenant by engaging in the actions identified above.

34. Hardee's breach caused ARC significant damages in an amount to be proven at trial.

**WHEREFORE, ARC prays as follows**:

1. That Hardee's take nothing by way of its First Amended Complaint;

2. That ARC be award all damages available under law or equity in an amount to be proven at trial

3. That ARC be awarded its costs and fees incurred in defense of Hardee's First Amended Complaint and in prosecution of ARC's Cross-Complaint; and

4. For such other and further relief as the Court may deem just and proper.

<u>ARC DEMANDS A TRIAL BY JURY</u>

Respectfully submitted,

BUTLER SNOW LLP

/s/ David L. Johnson
David L. Johnson, BPR #18732
Jordyne Johnson Richartz, BPR #038434
Neuhoff Building
1320 Adams Street, Suite 1400
Nashville, TN 37208
Telephone: (615) 651-6700

24

Fax: (615) 651-6701
David.johnson@butlersnow.com
Jordyne.richartz@butlersnow.com


Matthew S. McConnell
(*motion to appear pro hac vice forthcoming*)
T. Sean Mann-O'Halloran
(*motion to appear pro hac vice forthcoming*)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
858-720-8900
mmcconnell@sheppard.com
smann-ohalloran@sheppard.com

*Counsel for Defendants Arc Burger, LLC and
Anand U. Gowda*

**CERTIFICATE OF SERVICE**

       I certify that on March 2, 2026, I electronically filed a true and correct copy of ARC Burger, LLC's Answer to First Amended Complaint with the Clerk of Court for the U.S. District Court Middle District of Tennessee through the Court's Electronic Case Filing System, which will automatically serve all counsel of record listed below:

John F. Verhey
DLA Piper LLP (US)
444 W. Lake Street Suite 900
Chicago, Illinois 60606-0089
John.vehey@us.dlapiper.com
*Attorneys for Plaintiff*

Madeline A. Cordray
DLA Piper LLP (US)
2525 East Camelback Rd., Suite 1000
Phoenix, Arizona 85016
Madeline.cordray@us.dlapiper.com
*Attorneys for Plaintiff*

Robb S. Harvey
Charley Williamson
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
robb.harvey@hklaw.com
charley.williamson@hklaw.com
*Attorneys for Plaintiff*

                                    */s/ David L. Johnson*
                                    David L. Johnson